IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| EVELYN RIVERA | : | CIVIL ACTION |
| --- | --- | --- |
| v. | : | No. 19-877 |
| BAYVIEW LOAN SERVICING, et al. | : | |

**MEMORANDUM**

**Juan R. Sánchez, C.J.**                                                     **March 30, 2020**

Plaintiff Evelyn Rivera alleges Defendants Bayview Loan Servicing and Metropolitan Life Insurance Company incorrectly charged her over $26,000 in fees on her mortgage. She claims Defendants violated the Fair Debt Collection Practices Act (FDCPA), the Pennsylvania Unfair Trade Practices and Consumer Protection Law (UTPCPL), and the Real Estate Settlement Procedures Act (RESPA). Defendants have moved to dismiss Rivera's Amended Complaint. The Court will grant the motion in part and dismiss Rivera's vicarious liability claim against Metropolitan Life without leave to amend. The Court will deny the remainder of Defendants' motion, which seeks to dismiss Rivera's claims against Bayview.

**BACKGROUND[1]**

Rivera took out a government-insured mortgage on her house in 2010. A few years later, in 2013, she fell behind on the payments. As a result, the bank that held Rivera's mortgage began to foreclose on her house. While the foreclosure proceedings were pending, in April 2015, Bayview bought Rivera's mortgage from the bank. Bayview is a loan servicing company. Loan servicing companies typically perform administrative tasks related to loans, such as sending out

---

[1] In evaluating Defendants' motion to dismiss, the Court takes the well-pleaded facts set forth in the Amended Compliant as true. *See Fowler v. UPMC Shadyside*, 578 F.3d 203, 210-11 (3d Cir. 2009).

1

monthly statements and receiving payments. In addition to servicing loans, Bayview also purchases loans. It is one of the largest purchasers of defaulted government-insured loans.

On May 27, 2016, Bayview and Rivera negotiated an adjustment agreement to Rivera's mortgage. Under this new agreement, Rivera agreed to pay about $41,000 more in principal on her mortgage in exchange for Bayview charging her a lower interest rate and allowing her to pay off the mortgage over a longer time period. Bayview allegedly told Rivera the $41,000 increase in her principal included all fees and costs related to the foreclosure. The agreement also allegedly stated Bayview would pay its own attorneys' fees associated with the foreclosure proceedings. On August 30, 2016, about three months after Rivera signed the adjustment agreement, Bayview stopped the foreclosure on Rivera's house.

In September 2016, a few weeks after the foreclosure proceedings had ended, Rivera filed for bankruptcy because of an unrelated judgment against her. During her bankruptcy, she continued to make monthly mortgage payments to Bayview. Bayview did not send Rivera any monthly statements from the time her bankruptcy began until it sent a statement in April 2018. In the April 2018 statement, Bayview charged Rivera a total of $28,279.60, which included $27,145.69 in "fees and charges." These fees and charges were in addition to Rivera's regular monthly payment. The April 2018 statement also included the following disclaimer:

> Our records reflect that you are presently a debtor in an active bankruptcy case or you previously received a discharge in bankruptcy. This statement is being sent to you for informational purposes only. It should not be construed as an attempt to collect a debt against you personally. However, we retain our rights under the security instrument, including the right to foreclose our lien.

Am. Compl., Ex. D at 1. Rivera did not pay the total amount listed in the April 2018 statement, instead she paid her normal monthly payment. About a week after it sent the April 2018 statement, Bayview took $932.63 that Rivera had paid in the past and applied it to the $27,145.69 Rivera owed in fees and charges.

On May 16, 2018, Defendant Metropolitan Life bought Rivera's mortgage from Bayview, but Bayview continued to service the mortgage. When Metropolitan Life took over the mortgage, Rivera had not paid $26,213.06 of the fees and charges. Bayview continued to send Rivera monthly statements that included this amount in fees and charges. Beginning in August 2018, Bayview listed these fees and charges as "unpaid past payments." Am. Compl. ¶ 53.

Rivera did not understand why she owed so much in fees and charges. Rivera's concern about these fees and charges aggravated her post-traumatic stress disorder (PTSD) and anxiety. In September 2018, Rivera sent Bayview a letter about the fees and charges pursuant to the procedure set out in RESPA and related regulations. In this letter, Rivera asked Bayview for an explanation of the fees and charges. She also told Bayview she believed these fees and charges were incorrectly added to her account. Bayview sent Rivera a letter in response in November 2018. In its letter, Bayview explained the fees and charges were related to: (1) foreclosure costs and attorneys' fees (approximately $3,000); (2) bankruptcy costs and attorneys' fees (approximately $900); and (3) other litigation costs and attorneys' fees (approximately $23,000). According to Bayview's letter, the foreclosure costs and fees were charged to Rivera's account after the foreclosure proceedings had ended.

After Rivera received Bayview's response to her letter, she sent a second letter in December 2018. In this letter, she asked Bayview to explain the approximately $23,000 it charged her in unspecified litigation costs and fees. In particular, for each date that Bayview charged her for legal fees and costs, she asked Bayview to "provide the case caption, which court the litigation was in, and the purpose of Bayview's involvement in the litigation." Am. Compl., Ex. G at 2. She stated Bayview could not charge her for litigation unrelated to the mortgage. She also asked Bayview why she had been charged separately for foreclosure costs and fees. She believed all

foreclosure costs and fees were included in her increased principal under the mortgage adjustment agreement. She also questioned why her account was being charged for foreclosure costs and fees after the foreclosure had ended.

Bayview responded to Rivera's second letter in February 2019. In its response, Bayview said the foreclosure fees and costs were for the three months after Rivera signed the agreement but before the foreclosure ended. It also said the $23,000 in unspecified litigation fees and costs were "related to extensive bankruptcy litigation." Am. Compl., Ex. H at 3. It did not list the case caption, court, or reason for its involvement in this litigation. Both of the letters Bayview sent in response to Rivera's requests contained the following disclaimers:

> Bayview Loan Servicing, LLC is a debt collector. This letter is an attempt to collect a debt and any information obtained will be used for that purpose. To the extent that your obligation has been discharged or is subject to an automatic stay of bankruptcy this notice is for compliance and informational purposes only and does not constitute a demand for payment or any attempt to collect such obligation.
>
> Our records indicate that Evelyn Rivera filed a petition under Chapter 7 of the Bankruptcy Code on September 7, 2016. Nothing in this letter should be construed as an attempt to collect a debt against Ms. Rivera personally or an attempt to revive personal liability on any discharged debt. Rather, this letter serves only to respond to the request for information received from your office.

*Id.* at 1-2; *see also* Ex. F at 1-2 (using similar, but not identical, language).

After receiving Bayview's second response, Rivera continued to believe the $23,000 in litigation costs and fees and the $3,000 in foreclosure costs and fees were erroneously charged to her account. According to Rivera, Bayview could not have spent so much on her bankruptcy case because the bankruptcy was unrelated to her mortgage, and Bayview only filed one motion in that case.[2] Rivera also did not understand why, if the $23,000 in litigation costs and fees were related to the bankruptcy, they were categorized separately from the other $900 in costs and fees related

---

[2] The bankruptcy proceeding has continued from September 2016 to the present, and it is currently on appeal in the Third Circuit.

to the bankruptcy. As for the foreclosure fees, Rivera continues to believe those should have been included in the new principal under her adjustment agreement, or, to the extent these fees were attorneys' fees, they should have been paid by Bayview pursuant to the adjustment agreement. Rivera alleges she continues to suffer anxiety and PTSD related to the improper fees and charges. Rivera also alleges Bayview's failure to respond adequately to her letters is part of a broader pattern. She cites to thousands of Consumer Protection Bureau complaints and a half dozen federal court cases which involve similar behavior.

Rivera filed this case on February 28, 2019, and Defendants filed their first motion to dismiss in May 2019. In response to this motion, Rivera filed an Amended Complaint on June 7, 2019. In the Amended Complaint, Rivera alleges five counts against Bayview: violations of the FDCPA (Count I); violations of Pennsylvania's UTPCPL and the related Fair Credit Extension Uniformity Act (FCEUA) (Counts II and III); and violations of RESPA (Counts IV and V). Rivera's sole claim against Metropolitan life is for violations of the UTPCPL and FCEUA (Count III). Both Defendants moved to dismiss all counts in the Amended Complaint for failure to state a claim.

**DISCUSSION**

The Court will grant Defendants' motion in part and deny it in part. The Court will not dismiss Rivera's claims against Bayview. Rivera has stated an FDCPA claim against Bayview because she has pleaded Bayview was a debt collector and it was collecting a debt. Rivera has stated UTPCPL and FCEUA claims against Bayview because she has pleaded reliance and ascertainable loss. Rivera has stated RESPA claims against Bayview because she has pleaded damages. The Court will, however, dismiss Rivera's claim against Metropolitan Life. Rivera

cannot bring her UTPCPL and FCEUA claim against Metropolitan Life vicariously because she has not alleged Metropolitan Life is a debt collector.

A court must deny a motion to dismiss when, "accepting all the factual allegations as true and drawing every reasonable inference in favor of the [plaintiff]," the complaint alleges "a claim that is plausible on its face." *Owner Operator Indep. Drivers Ass'n, Inc. v. Pa. Tpk. Comm'n*, 934 F.3d 283, 290 n.7 (3d Cir. 2019). A complaint "does not need detailed factual allegations" if it contains something "more than labels and conclusions." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). The Court will apply this standard to each of Rivera's claims in turn.

First, Rivera has stated a claim under the FDCPA. To state an FDCPA claim, a plaintiff must allege "(1) she is a consumer, (2) the defendant is a debt collector, (3) the defendant's challenged practice involves an attempt to collect a 'debt' . . . , and (4) the defendant has violated a provision of the FDCPA in attempting to collect the debt." *Barbato v. Greystone Alliance, LLC*, 916 F.3d 260, 265 (3d Cir. 2019) (internal quotation marks and citations omitted). Bayview challenges only two of these elements in its motion to dismiss: whether Rivera has adequately alleged that Bayview is a debt collector and was collecting a debt.

Rivera has alleged Bayview is a debt collector. The FDCPA defines a debt collector as someone who either: "[1] uses any instrumentality of interstate commerce or the mails in any business the principal purpose of which is the collection of any debts, or [2] regularly collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or due another." 15 U.S.C. § 1692a(6). This definition does not include "any person collecting or attempting to collect any debt owed or due or asserted to be owed or due another to the extent such activity . . . concerns a debt which was not in default at the time it was obtained by such person." *Id.* at § 1692a(6)(F)(iii).

6

Rivera's allegations plausibly suggest Bayview's principal purpose is the collection of debt. The Third Circuit has explained that "an entity that has the collection of any debts as its most important aim is a debt collector under" the FDCPA's principal purpose definition. *Barbato*, 916 F.3d at 267 (internal quotations omitted). It also concluded that a business that buys debts which are in default is a debt collector even if it hires a third party to service the debt. *Id.* at 266-67. In this case, not only does Bayview allegedly buy debt that is in default, it also services that debt itself. Rivera alleges that Bayview's principal business is buying and servicing this defaulted debt. Her Amended Complaint states:

> Bayview's principal purpose is the collection of debts. Bayview exists for the purpose of collecting payments on debts that it owns or debts that are owned by others. Although Bayview performs some other services, such as arranging for the modification of mortgages, those services are are [sic] in furtherance of its primary purpose of collecting debts from debtors. Bayview is one of the largest purchasers of defaulted government-backed loans such as Ms. Rivera's, which it buys in bulk auctions held by the government.

Am. Compl. ¶¶ 72-75. In addition to these allegations, Rivera attached to her Amended Complaint two letters sent by Bayview in which Bayview states "Bayview Loan Servicing, LLC is a debt collector." Am. Compl. Ex. F at 1, and Ex. H at 1. Because Bayview admits in its letters that it is a debt collector and Rivera has alleged a principal part of its business is buying defaulted debt, the Amended Complaint sufficiently alleges Bayview's principal purpose is the collection of debt. *See Barbato*, 916 F.3d at 266-67; *see also Tepper v. Amos Fin., LLC*, 898 F.3d 364, 370 (3d Cir. 2018) (holding a defendant was a debt collector when "[i]ts admitted sole business is collecting debts").

Rivera has also sufficiently alleged Bayview does not fall under the FDCPA's exception for the collection of debt purchased when the debt was not in default. Rivera alleges her mortgage was in default both when Bayview purchased it and when Metropolitan Life purchased it. When Bayview purchased her debt, she was in foreclosure proceedings because she had gotten behind on her payments. When Metropolitan Life purchased her debt on May 16, 2018, she had not paid

7

over $26,000 in charges and fees which were allegedly due by May 1, 2018. Bayview argues Rivera's loan was not in default in May because Rivera's April 2018 statement showed $0 in "unpaid past payments." Am. Compl., Ex. D at 1. While this is true, Rivera alleges she did not pay the amount due under the April statement and she was therefore in default in May. *See* Am. Compl. ¶ 78 ("At the time that Defendant MetLife acquired the Loan . . . Ms. Rivera's account was in default, because the most recent statement listed a large amount of fees and costs due that Ms. Rivera did not pay by the due date, or by the date the Mortgage was assigned to MetLife."). At this stage in the proceedings, the Court must accept Rivera's plausible allegation as true. Thus, Rivera's loan was in default when Metropolitan Life purchased it.

Bayview also argues Rivera cannot allege it was a debt collector because it was a mortgage servicer. While not all mortgage servicers are per se debt collectors, this does not mean that no mortgage servicer can be a debt collector. In this case, Rivera has alleged Bayview's business model was to buy defaulted mortgage debt and attempt to collect on that debt. If this allegation is true, Bayview is both a debt collector and a mortgage servicer. *See Barbato*, 916 F.3d at 266-67 (a business that buys defaulted debt and tries to collect on it is a debt collector).

Rivera has therefore alleged Bayview is a debt collector because its principal purpose is the collection of debt[3] and Rivera's debt was purchased while the loan was in default.

Rivera has also sufficiently alleged Bayview was attempting to collect a debt when it sent her monthly statements. A party attempts to collect a debt when it performs an "activity undertaken for the general purpose of inducing payment." *McLaughlin v. Phelan Hallinan & Schmieg, LLP*,

---

[3] Because the Court finds Rivera has alleged Bayview's principal purpose is the collection of debt, the Court need not address whether Rivera sufficiently alleged that Bayview fit the FDCPA's other definition of debt collector: a person who "regularly collects . . . [debts] due [to] another." 15 U.S.C. § 1692a(6). The FDCPA's definitions are disjunctive so a party need only meet one of the two definitions to be considered a debt collector.

756 F.3d 240, 245 (3d Cir. 2014). Debt collection activities include sending "communications that . . . discuss[] the status of payment." *Id.* These communications "need not contain an explicit demand for payment." *Id.* Here, Rivera alleges Bayview sent monthly statements to her for nearly a year telling her payment amounts, due dates, and listing over $26,000 as "unpaid past payments." Am. Compl. ¶ 53. Based on these allegations, these communications could plausibly have been for the purpose of inducing payment.

Bayview argues the disclaimer language in the monthly statements demonstrate that it was not collecting a debt, but this argument is premature at this stage of the litigation. Rivera has only attached to her Amended Complaint two of the alleged monthly statements she received in connection with her mortgage debt. Bayview asks the Court to presume the disclaimers contained in these statements were identical to the disclaimers in the other statements not attached to Rivera's Amended Complaint. The Court will not make such an assumption, which is inappropriate at this stage when all inferences must be made in Rivera's favor. Indeed, the two statements attached to Rivera's Amended Complaint contain different disclaimer language, which indicates that this language was not uniform across the monthly statements. *Compare* Am. Compl., Ex. D at 1 (April 2018 statement containing disclosure language that states "we retain our rights under the security instrument, including the right to foreclose our lien."),[4] *with id.* Ex. I at 1 (February 2019 statement not containing the language about Bayview retaining its rights).

While Bayview points out that other circuits have found communications containing disclosure language like that at issue here were not attempts to collect a debt, those courts were able to examine all communications at issue in their cases. *See, e.g., Lovegrove v. Ocwen Home*

---

[4] Drawing all inferences in favor of Rivera, this language could imply that, if Rivera did not pay her bill, Bayview would foreclose on her house.

*Loans Servicing, L.L.C.*, 666 F. App'x 308, 311 (4th Cir. 2016) (reviewing a motion for summary judgment after the parties had conducted discovery and describing all the communications at issue in that case). Viewing all communications at issue is important because, even when a communication contains appropriate disclaimer language, it may nonetheless be an attempt to collect a debt if it contains other language negating that disclosure language.[5] Therefore, because the Court does not have all the communications at issue here, it will not conclude that Bayview's disclaimers took those communications out of the realm of debt collection when Rivera alleges otherwise.

The Court will thus not dismiss Rivera's FDCPA claim because she has pleaded Bayview was a debt collector collecting a debt.

The Court next turns to Rivera's UTPCPL and FCEUA claims. In Count II of her Amended Complaint, Rivera alleges Bayview violated the UTPCPL by, among other things, misrepresenting that the additional principal she agreed to pay under the loan adjustment agreement covered her foreclosure fees and costs. In Count III of her Amended Complaint, Rivera alleges both Bayview and Metropolitan Life violated the FCEUA and, consequently, the UTPCPL. Rivera alleges violations of these two statutes together because violating the FCEUA is a per se violation of the UTPCPL, and the UTPCPL is the sole way of enforcing a violation of the FCEUA. *See* 73 Pa. Stat. § 2270.5 (a violation of the FCEUA is a violation of the UTPCPL); *Kaymark v. Bank of Am.,*

---

[5] Bayview cites an unpublished per curiam opinion from the Eleventh Circuit which was decided at the motion to dismiss stage, but even that case explains "a monthly statement that is in conformity with TILA [the Truth in Lending Act which mandates the disclosures at issue here] may nevertheless include additional language that constitutes debt collection." *Green v. Specialized Loan Servicing LLC*, 766 F. App'x 777, 785 (11th Cir. 2019). Therefore, even under the logic of this non-precedential out of circuit case, it is not enough for Bayview to say all its communications included disclaimers because those communications may have included other language negating the disclaimers.

*N.A.*, 783 F.3d 168, 182 (3d Cir. 2015), *abrogated on other grounds by Obduskey v. McCarthy & Holthus LLP*, 139 S. Ct. 1029, 203 L. Ed. 2d 390 (2019) ("The FCEUA therefore does not provide its own private cause of action; rather, it is enforced through the remedial provision of the UTPCPL."). The Court will not dismiss Rivera's UTPCPL and FCEUA claims against Bayview. The Court will, however, dismiss Rivera's UTPCPL and FCEUA claim against Metropolitan Life because Rivera failed to allege Metropolitan Life is vicariously liable for Bayview's actions.

To allege a claim under either the UTPCPL or the FCEUA, "a plaintiff must demonstrate (1) ascertainable loss of money or property, real or personal (2) as a result of the defendant's prohibited conduct under the statute." *Kaymark*, 783 F.3d 168 at 180; *see also Kern v. Lehigh Valley Hosp., Inc.*, 108 A.3d 1281, 1290 (Pa. Super. Ct. 2015) ("The inclusion of a violation of the FCEUA as also being a violation of the UTPCPL, evinces a clear intent by our Legislature that FCEUA claims be treated in the same manner as other private action claims under the UTPCPL."). To show that the loss was "a result of" the defendant's behavior, a plaintiff must allege she justifiably relied on the defendant's fraudulent or deceptive conduct. *See Yocca v. Pittsburgh Steelers Sports, Inc.*, 854 A.2d 425, 438 (Pa. 2004) ("To bring a private cause of action under the UTPCPL, a plaintiff must show that he justifiably relied on the defendant's wrongful conduct or representation."). Bayview challenges Rivera's allegations of justifiable reliance in Count II and her allegations of ascertainable loss in both Counts II and III.

In Count II, Rivera has pled she justifiably relied on Bayview's statement that the increased principal in her loan adjustment agreement included the foreclosure fees and costs. Rivera alleges she justifiably relied on this representation when she signed the agreement and made monthly payments toward the principal and interest contemplated under the agreement. *See* Am. Compl. ¶¶ 93-95. Bayview argues its alleged false statements had nothing to do with the fees it later

charged to Rivera, but this is incorrect. Rivera signed the adjustment agreement believing her new principal amount included the foreclosure costs and fees. When she was later charged those costs and fees (possibly for the second time),[6] she realized Bayview had made a false statement about those costs and fees being included in her adjusted principal.

Rivera has also alleged an ascertainable loss. She alleges Bayview took $932 from the amount she previously paid and put it towards the $27,000 in improperly charged fees. *See* Am. Compl. ¶ 30. This $932 in Rivera's money is an ascertainable loss. *See* 73 Pa. Stat. § 201-9.2 (creating a private right of action for anyone who "suffers any ascertainable loss of *money* or property, real or personal" (emphasis added)). Bayview does not challenge that this money would be an ascertainable loss. Instead, it attacks Rivera's other alleged losses, including her alleged medical losses and the increase in her mortgage lien. The Court need not address these potential losses, however, because the $932 Bayview took from Rivera's payments to cover the disputed fees and costs is an ascertainable loss. Because Rivera has pleaded an ascertainable loss and justifiable reliance, the Court will not dismiss her UTPCPL and FCEUA claims against Bayview.

The Court will, however, dismiss Rivera's UTPCPL and FCEUA claim against Metropolitan Life because Rivera has not pleaded Metropolitan Life is a debt collector, a prerequisite for vicarious liability.

While neither the Pennsylvania Supreme Court nor the Third Circuit has directly addressed vicarious liability under the FCEUA, the Court concludes that only debt collectors can be vicariously liable under this statute. The FCEUA has distinct prohibitions for debt collectors and creditors. A debt collector is liable under the statute if it "violates any of the provisions of the Fair

---

[6] *See* Am. Compl. ¶ 95 ("Upon information and belief, Bayview is either double-charging Ms. Rivera for fees that were already capitalized in her Loan Adjustment Agreement, or charging her foreclosure fees that were not justified or authorized by the Loan documents.").

12

Debt Collection Practices Act" and a creditor is liable if it engages in any one of six enumerated prohibited actions while performing "debt collection activities." 73 Pa. Stat. § 2270.4. The prohibited actions for creditors include direct behavior like "communicating with any person other than the consumer or the purpose of acquiring location information about the consumer [without] . . . identify[ing] himself" or "communicat[ing] with a consumer . . . at any unusual time or place." *Id.* § 2270.4(b)(1)–(2). This statutory language does not convey an intent by the Pennsylvania legislature to impose vicarious liability on creditors under this Act. On the other hand, the FCEUA includes liability for all debt collectors who violate the FDCPA, and the FDCPA does allow vicarious liability for debt collectors. *Pollice v. Nat'l Tax Funding, L.P.*, 225 F.3d 379, 404 (3d Cir. 2000) ("[A]n entity which itself meets the definition of 'debt collector' may be held vicariously liable [under the FDCPA] for unlawful collection activities carried out by another on its behalf."); *see also In re Howe*, 446 B.R. 153, 159 (Bankr. E.D. Pa. 2009) (looking to the limits of vicarious liability under the FDCPA to determine vicarious liability under the FCEUA).

Rivera nonetheless argues vicarious liability is available for creditors under the FCEUA because "when Congress creates a tort action, it legislates against a legal background of ordinary tort-related vicarious liability rules and consequently intends its legislation to incorporate those rules." *Meyer v. Holley*, 537 U.S. 280, 285 (2003). Because the FCEUA can only be enforced under the UTPCPL, the Court must examine whether the UTPCPL is a tort which presumptively includes vicarious liability. Pennsylvania courts consider the UTPCPL as an amalgamation of different claims, not solely a tort. *See Gabriel v. O'Hara*, 534 A.2d 488, 494 (Pa. Super. 1987) (explaining the UTPCPL includes many types of actions "which might be analogized to passing off, misappropriation, trademark infringement, disparagement, false advertising, fraud, breach of contract, and breach of warranty"). Courts considering assignee liability under the UTPCPL have

13

found this statute "does not impose liability on parties who have not themselves committed any wrongdoing." *Williams v. Nat'l Sch. of Health Tech., Inc.*, 836 F. Supp. 273, 283 (E.D. Pa. 1993); *see also Murphy v. F.D.I.C.*, 408 F. App'x 609, 611 (3d Cir. 2010) (quoting *Williams*). Given this authority, the Court concludes the FCEUA does not include vicarious liability apart from the vicarious liability available against debt collectors under the FDCPA.

Rivera has not alleged Metropolitan Life is a debt collector, so she has not alleged her FCEUA and UTPCPL claim against Metropolitan Life. Rivera's claim against Metropolitan Life is based entirely on a theory of vicarious liability. She does not allege Metropolitan Life took any direct illegal action in connection with collecting her debt. Therefore, in order to pursue her vicarious liability theory, Rivera must plead Metropolitan Life is a debt collector. She has not done so, and her claim against Metropolitan Life fails. The Court will thus dismiss Rivera's FCEUA and UTPCPL claim against Metropolitan Life, but not her FCEUA and UTPCPL claims against Bayview.

Finally, the Court will not dismiss Rivera's RESPA claims because she has pleaded actual damages.[7] Under RESPA, a mortgage servicer must respond to qualified written requests from the borrower. *See* 12 U.S.C. § 2605(e)(2). This response must provide information requested by the borrower. *See id.* at § 2605(e)(2)(C)(i). If the borrower claims there is an error in her charges, the response must either correct the error or explain why there is no error. *See id.* at § 2605(e)(2)(A)–(B). To plead a violation of this statutory provision, a plaintiff must allege "actual damages to the borrower as a result of the [servicer's] failure" to comply with this provision. *Id.* at § 2605(f)(1)(A);

---

[7] The parties also dispute whether Rivera has adequately pleaded Bayview engaged in a pattern or practice of RESPA violations. Because Plaintiff has pleaded actual damages, her claims would survive regardless of whether she pleaded a pattern or practice of RESPA violations. Thus, the Court will not address this issue at this stage of the case.

14

*see also Stefanowicz v. SunTrust Mortg.*, 765 F. App'x 766, 772 (3d Cir. 2019) (affirming the dismissal of a plaintiff's RESPA claim "[b]ecause she failed to assert facts that meet the essential actual damages element of a claim under the RESPA"). Emotional damages can support a claim for RESPA violations. *See, e.g.*, *Catalan v. GMAC Mortg. Corp.*, 629 F.3d 676, 696 (7th Cir. 2011) ("[E]motional distress damages are available as actual damages under RESPA.").

Rivera has alleged she suffered emotional damages as a result of Bayview's RESPA violations. She claims she had increased anxiety and PTSD because Bayview did not correct the errors in her bill or provide her with an adequate explanation of her charges. Bayview argues Rivera's anxiety was due to the alleged excess fees and not Bayview's responses to Rivera's letters. At this point in the case, however, the Court will not assume the cause of Rivera's anxiety. The Court must instead take Rivera's Amended Complaint as true when she alleges "[a]s a proximate cause of Bayview's failure to correct or justify the charges in response to the RESPA letters, Ms. Rivera suffered additional anxiety and emotional distress, and continued to require and pay for medical help for PTSD and anxiety." Am. Compl. ¶ 67. Rivera has therefore pleaded actual damages and her RESPA claims will not be dismissed.[8]

**CONCLUSION**

Rivera has sufficiently pleaded her FDCPA, UTPCPL, FCEUA, and RESPA claims against Bayview. She has not, however, pleaded her UTPCPL and FCEUA claim against Metropolitan Life. The Court will therefore grant Defendants' motion to dismiss in part and deny it in part. The

---

[8] Bayview also argues Rivera lacks standing to bring her RESPA claims. Because Rivera has alleged actual damages as a result of Bayview's RESPA violations, she has also alleged an injury in fact caused by Bayview's behavior. *See Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560–61 (1992) (to show she has standing, Rivera must demonstrate: (1) she "suffered an injury in fact"; (2) the injury is "fairly . . . trace[able] to the challenged action of the defendant"; and (3) "the injury will be redressed by a favorable decision." (internal citations omitted; alterations in original))

Court will not grant Rivera leave to amend her complaint to state a claim against Metropolitan Life because the Court finds amendment would be futile. To state a claim against Metropolitan Life, Rivera would have to assert that Metropolitan Life, an insurance company, was in fact a debt collector. Rivera would be unable to make such an assertion, and her attempt to do so would be futile.

    An appropriate order follows.

BY THE COURT:

/s/ Juan R. Sánchez
Juan R. Sánchez, C.J.